IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


BRIAN BURCH,                        )
                                   )
            Plaintiff,              )
                                   )    CIVIL ACTION
v.                                 )
                                   )    No. 06-4059-SAC-JTR
                                   )
MICHAEL J. ASTRUE,[1]              )
Commissioner of Social Security,   )
                                   )
            Defendant.             )
_____ )


### REPORT AND RECOMMENDATION

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits and supplemental security income under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act). The matter has been referred to this court for a report and recommendation. The court recommends the decision be REVERSED and the case be REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g).

---

[1]On Feb. 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I.   Background

Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially and upon reconsideration.  (R. 17, 28-30, 227-28).  A hearing before an Administrative Law Judge (ALJ) was held on Apr. 25, 2005.  (R. 17, 279-310).  Plaintiff, who was represented by an attorney, appeared and testified.  (R. 17, 279, 280).  Also testifying were a vocational expert and plaintiff's sister.  (R. 17, 279, 280). On Jun. 22, 2005, the ALJ issued a decision in which he found that although plaintiff is unable to perform his past relevant work, he is able to perform other work existing in significant numbers in the economy and is, therefore, not disabled within the meaning of the Act and the regulations.  (R. 17-26).

Specifically, the ALJ found that plaintiff has severe impairments of obesity, status-post lumbar fusion, and degenerative disc disease of the lumbar spine.  (R. 20).  With regard to plaintiff's other impairments, the ALJ found hearing loss and sleep apnea "not severe" within the meaning of the Act and regulations because plaintiff's sleep apnea is controlled with a C-PAP machine and his hearing loss is not significant. (R. 20).  The ALJ also found situational depression or dysthymia which are "not severe."  Id.  He found that plaintiff alleges other impairments of spina bifida, carpal tunnel syndrome, panic attacks, paranoia, loss of balance, and numbness in the fingers

which are not medically determinable in this case.  (R. 20-21).
The ALJ found plaintiff's impairments do not meet or equal the
severity of an impairment listed in the Listing of Impairments.
(R. 21-22).

The ALJ considered the testimony and the evidence, found
plaintiff's statements regarding functional limitations are not
credible, and assessed plaintiff's residual functional capacity
(RFC).  (R. 22-23).  He found that plaintiff is unable to perform
his past relevant work, but can perform other work in the economy
such as final assembler, vehicle driver, document preparer,
ticket checker, and telephone quotation clerk.  (R. 24-25).  He
concluded that because plaintiff is able to make an adjustment to
other work in the economy, he is not disabled within the meaning
of the Act, and denied plaintiff's applications.  (R. 25).

Plaintiff sought Appeals Council review of the ALJ's
decision and submitted considerable additional evidence for the
Council's consideration, including Navy medical records from
1979, and Veteran's Affairs medical records from Mar. through
Jul., 2005.  (R. 229-314).  The Appeals Council accepted the new
evidence, issued an order making the new evidence a part of the
administrative record (R. 9), and denied plaintiff's request for
review.  (R. 5-8).  Therefore, the ALJ decision is the final
decision of the Commissioner.  (R. 10); Threet v. Barnhart, 353

F.3d 1185, 1187 (10th Cir. 2003).  Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion.  Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which

-4-

prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and inability to work must last twelve months).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.; 20 C.F.R. §§ 404.1520, 416.920 (2005).

    The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

    In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51.  If claimant's impairments do not meet or equal the severity of a listed impairment, the Commissioner assesses

-5-

claimant's RFC.  20 C.F.R. §§ 404.1520, 416.920.  This assessment
is used at both step four and step five of the process.  Id.

       After assessing claimant's RFC, the Commissioner evaluates
steps four and five, whether the claimant can perform his past
relevant work, and whether he is able to perform other work in
the economy.  Williams, 844 F.2d at 751.  In steps one through
four the burden is on claimant to prove a disability that
prevents performance of past relevant work.  Dikeman v. Halter,
245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751
n.2.  At step five, the burden shifts to the Commissioner to show
other jobs in the economy within plaintiff's capacity.  Id.;
Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

       Plaintiff claims that the ALJ erred:  (1) at step two--in
failing to find his sleep apnea and carpal tunnel syndrome are
"severe" impairments; (2) at step three--in failing to find his
impairments meet or equal Listing 1.04(A) or (C), and in failing
to call a medical expert to testify regarding medical
equivalence; and (3) in failing to properly analyze the effects
of obesity.  He claims that the Appeals Council erred in failing
to consider the evidence from his Jun. 29, 2005 visit at the
Veteran's Affairs hospital.  The Commissioner argues the evidence
supports the ALJ's finding that sleep apnea and carpal tunnel
syndrome (CTS) are not "severe;" that medical expert testimony
regarding equivalence is not required in the circumstances of

-6-

this case, and the evidence supports the ALJ's step three
findings; that the ALJ properly considered the effects of
obesity; and that the Jun. 29, 2005 VA evidence was not before
the ALJ and the Appeals Council properly found it provided no
basis to change the ALJ's decision.  The court will consider the
step two and step three issues in order of the sequential
evaluation process, and the other, general issues thereafter.

## III. Step Two

     Plaintiff claims the "evidence clearly supports the 'de
minimus' standard that Mr. Burch's sleep apnea was 'severe.'"
(Pl. Br., 25).  He claims the ALJ erroneously found that carpal
tunnel syndrome (CTS) could not be medically determined.  (Pl.
Br., 26).  The Commissioner argues that plaintiff' sleep apnea
did not cause more than minimal limitations in his ability to
perform work activities, and that substantial evidence in the
record supports the ALJ's finding that plaintiff's sleep apnea is
controlled.  (Comm'r Br., 5-6).  He concludes, "The record
supports the ALJ's finding that Plaintiff's sleep apnea and CTS
were not severe."  (Comm'r Br., 7).

### A.   Standard Applied at Step Two

     Disability may be found only if a claimant has a medically
determinable impairment.  20 C.F.R. §§ 404.1505, 416.905.  An
impairment "must result from anatomical, physiological, or
psychological abnormalities which can be shown by medically

acceptable clinical and laboratory diagnostic techniques," and
"must be established by medical evidence consisting of signs,
symptoms, and laboratory findings, not only by [plaintiff's]
statement of symptoms."  20. C.F.R. §§ 404.1508, 416.908.
Evidence to establish a medically determinable impairment must
come from "acceptable medical sources" such as licensed
physicians, psychologists, or similar professional medical care
providers.  Id., §§ 404.1513(a), 416.913(a).

At step two, the ALJ must determine whether any of
plaintiff's medically determinable impairments, or a combination
thereof, is "severe."  Id., §§ 404.1520(c), 416.920(c).  An
impairment is not severe if it does not significantly limit
plaintiff's ability to do basic work activities such as walking,
standing, sitting, carrying, understanding simple instructions,
responding appropriately to usual work situations, and dealing
with changes in a routine work setting.  Id., §§ 404.1521,
416.921.  The Tenth Circuit has determined that to establish a
"severe" impairment, plaintiff must make only a "de minimis"
showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).
Plaintiff need only show that an impairment would have more than
a minimal effect on his ability to do basic work activities.
Williams, 844 F.2d at 751.  However, he must show more than the
mere presence of a condition or ailment.  Id. (citing Bowen v.
Yuckert, 482 U.S. 137, 153 (1987)).  If an impairment's medical

-8-

severity is so slight that it could not interfere with or have a
serious impact on plaintiff's ability to do basic work
activities, it could not prevent plaintiff from engaging in
substantial work activity and will not be considered severe.
<u>Hinkle</u>, 132 F.3d at 1352.

> **B.**    **The ALJ's Determinations**

The ALJ found that plaintiff has severe impairments of
obesity, status-post lumbar fusion, and degenerative disc disease
of the lumbar spine.  (R. 20).  He found plaintiff's hearing loss
and situational depression or dysthymia are "not severe."  <u>Id.</u>
The ALJ noted, "The claimant has sleep apnea; however, it is
controlled with a C-PAP machine."  <u>Id.</u>(citing Ex. 5F).
Therefore, he found sleep apnea is not severe.  <u>Id.</u>  He quoted
<u>Soc. Sec. Ruling</u> (SSR) 96-4p for the proposition that symptoms
may not be the basis for a disability finding "unless there are
medical signs and laboratory findings demonstrating the existence
of a medically determinable . . . impairment," and determined
that "in the absence of objective documentation, the [ALJ] finds
that the existence of . . . carpal tunnel syndrome . . . cannot
be medically determined."  (R. 20-21).

> **C.**   **Analysis**

The ALJ found that plaintiff's sleep apnea is controlled
with a C-PAP machine, and that finding is supported by
substantial evidence in the record.  The exhibit to which the ALJ

cited to support his finding reveals that a sleep study was done in April, 2004 in which the technician recorded, "Veteran started out with a CPAP pressure of 5CMH2O.  CPAP was triturated to a pressure of 12 cmH2O and 10 degrees HOB elevation, where his apnea's and snoring discontinued." (R. 203).  The physician recorded his "Impression:  OSAS:  improved with CPAP of 12 CM H2O and 10 degree head of bed elevation." Id.  The physician recommended "initiate CPAP 12 CMH2O and head of bed elevation as above," and commented that sleep efficiency was 92%.  Id.

Plaintiff testified that although he uses a C-PAP machine, he does not awaken rested, and he lies down for about an hour each day.  (R. 298-99).  Plaintiff points to Dr. Chavez's records showing plaintiff's wife's report that at times he would stop breathing at night and she would shake him to awaken him, showing that plaintiff had a history of sleep apnea, that Dr. Chavez referred him for a sleep apnea study, and that Dr. Chavez diagnosed severe obstructive sleep apnea.  (R. 149, 150, 166-68).  Plaintiff noted his report to a consultative examiner that he uses a C-PAP machine which helps him sleep, but that he continues to snore, he has afternoon fatigue, and he falls asleep quite easily when reading or watching television.  (R. 160).  Plaintiff cited this testimony and medical evidence regarding his sleep apnea, and argued that the "evidence clearly supports the 'de

-10-

minimus' standard that Mr. Burch's sleep apnea was 'severe.'"
(Pl. Br., 24-25).   The court disagrees.

As the Commissioner points out, the record shows treatment
for sleep apnea at least as early as Jan., 2001 (R. 149),
plaintiff does not allege disability onset until Mar. 31, 2003
(R. 65, 220), and plaintiff performed substantial gainful
activity during 2001 and 2002 (R. 77) despite sleep apnea.
(Comm'r Br., 5).   Therefore, during the time period from Jan.
2001 through 2002 the record demonstrates conclusively that sleep
apnea did not cause more than minimal limitation in plaintiff's
ability to perform basic work activities.   Moreover, the 2004
sleep study discussed above demonstrated that increasing the
pressure and elevating the head of the bed caused the sleep apnea
and snoring to stop.   The only evidence tending to indicate that
plaintiff's sleep apnea has more than a minimal affect on his
ability to perform <u>basic work activities</u> is plaintiff's testimony
regarding falling asleep easily and taking naps in the afternoon.
However, the ALJ found plaintiff's testimony was not credible (R.
22, 23) and plaintiff does not dispute this finding.   (Pl. Br.,
26)(admitting the ALJ found plaintiff's "impairment allegations
'not credible'").   Other than plaintiff's own testimony,
plaintiff points out, and the court finds, no evidence in the
record which establishes that plaintiff's sleep apnea has more
than a minimal effect on his ability to perform basic work

-11-

activities.  The ALJ did not err in finding plaintiff's sleep apnea is controlled by use of a C-PAP machine and is, therefore, not "severe."

As plaintiff claims, however, the ALJ erred in finding plaintiff's carpal tunnel syndrome not medically determinable. The ALJ noted that Dr. Chavez diagnosed plaintiff with CTS on Feb. 10, 2004 (R. 19)(citing Ex. 4F), and that the VA medical records contained a diagnosis of CTS on Feb. 16, 2005.  (R. 19)(citing Ex. 5F).  Despite these admitted diagnoses, the ALJ found that CTS was not medically determinable because of the "absence of objective documentation."  (R. 20-21)(citing SSR 96-4p for the proposition that a medically determinable impairment requires the presence of medical signs and laboratory findings). Even to the extent the ALJ might believe a diagnosis by an acceptable medical source is insufficient to establish a medically determinable impairment absent confirmatory medical signs or laboratory findings, he has erred in his finding because the VA physician's diagnosis is supported by confirmatory medical signs.  The VA physician, Mary Moore, M.D., found "+Tinnel's [sic] sign bilaterally."  (R. 177).  "Tinel's sign" is defined as "a sensation of tingling, or of 'pins and needles,' felt in the distal extremity of a limb when percussion is made over the site of an injured nerve."  Stedman's Medical Dictionary, 1619 (Marjory Spraycar ed., 26th ed. 1995).  Even if the court accepts

the ALJ's apparent understanding that a diagnosis by an acceptable medical source without confirmatory signs or laboratory findings is insufficient to establish a medically determinable impairment, the physician's discovery of Tinel's sign bilaterally is a confirmatory medical sign (or signs) supporting her diagnosis and is sufficient to establish that CTS is a medically determinable impairment in this case.

Moreover, without deciding the issue at this time, the court notes that a diagnosis by an acceptable medical source might establish a medically determinable impairment if supported by an examination of the plaintiff including plaintiff's description of his symptoms, even where there are no confirmatory medical signs or laboratory findings.  Evidence from an acceptable medical source is necessary to establish a medically determinable impairment; 20 C.F.R. §§ 404.1513(a), 416.913(a); and "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908). The regulations might be read to preclude finding a medically determinable impairment based solely on a claimant's statement of symptoms but to allow such a finding where there has been a diagnosis by an acceptable medical source based on plaintiff's reported symptoms and an examination.  C.F. Sarchet v. Chater, 78

F.3d 305, 306 (7th Cir. 1996)(symptoms of fibromyalgia are "entirely subjective").

The ALJ erred in finding that plaintiff's CTS is not medically determinable.  The Commissioner argues that the ALJ was correct in finding CTS not severe, and the finding is supported by substantial evidence in the record.  As discussed above, however, the ALJ found that CTS is not medically determinable here.  Consequently, he did not address whether CTS is "severe" in the circumstances.  Limitations attributable to impairments which are not medically determinable may not be considered, whereas limitations attributed to impairments which are medically determinable but "not severe" must be considered in assessing RFC.  20 C.F.R. §§ 404.1508, 404.1523, 404.1545(a)(2), 416.908, 416.923, 416.945(a)(2); see also, Rutherford v. Barnhart, 399 F.3d 546, 554, n.7 (3d Cir. 2005)(to be considered in RFC assessment, impairment must be medically determinable, but need not be "severe"); Gibbons v. Barnhart, 85 Fed. App'x 88, 91 (10th Cir. 2003)("ALJ 'must consider only limitations and restrictions attributable to medically determinable impairments.'")(quoting SSR 96-8p, 1996 WL 374184 at *2).

Because the ALJ found plaintiff's CTS not medically determinable, he could not consider any limitations allegedly attributable to it in formulating his RFC assessment.  The court may not reweigh the evidence and formulate an RFC assessment in

-14-

the first instance.  White, 287 F.3d at 905.  Therefore, remand
is necessary for the Commissioner to properly evaluate step two
and each subsequent step in the sequential evaluation process,
recognizing that CTS is a medically determinable impairment in
the circumstances.

**IV.  Step Three**

Plaintiff makes three arguments regarding error in
application of step three of the sequential evaluation process.
First, he claims the ALJ failed to call a medical expert to
testify regarding medical equivalence.  Second, he claims that
the evidence in the record requires a finding that the
combination of his impairments medically equals Listing 1.04(A)
or (C).  Finally, plaintiff's supports his argument regarding
Listing 1.04 with evidence from a physical examination performed
on Jun. 29, 2005 at the Veteran's Affairs hospital, and argues
that the Appeals Council erred when it refused to consider that
evidence.  The Commissioner argues that the ALJ need not call a
medical expert in the circumstances of this case, that the record
evidence supports the ALJ's finding that plaintiff's impairments
do not equal Listing 1.04, and that the Appeals Council found the
evidence from Jun. 29, 2005 provided no basis to change the ALJ's
decision.

The court finds the Appeals Council erred in its
consideration of evidence from the Jun. 29, 2005 physical

-15-

examination.  Proper disposition of that issue on remand will affect both whether medical expert testimony is necessary concerning equivalence and whether plaintiff's impairments medically equal Listing 1.04.  Therefore, the court reviews the Appeals Council's consideration of the Jun. 29, 2005 evidence but finds that attempting to decide the remaining issues would be premature in the circumstances.

The regulations provide for consideration of new evidence presented to the Appeals Council.

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.  The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.  It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b)(§ 416.1470(b) is substantially identical).

The regulations also provide that

> If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application.

Id. §§ 404.976(b), 416.1476(b).  Where the Appeals Council accepts the new evidence and makes it a part of the administrative record, the court interprets those facts "as an

-16-

implicit determination [plaintiff] had submitted qualifying new evidence for consideration." <u>Martinez v. Barnhart</u>, 444 F.3d 1201, 1207 (10th Cir. 2006). Such evidence, made a part of the administrative record by the Appeals Council, will be considered by the District Court in its review of the Commissioner's decision. <u>O'Dell v. Shalala</u>, 44 F.3d 855, 859 (10th Cir. 1994).

Here the Appeals Council made plaintiff's additional evidence a part of the administrative record (R. 9) and specifically stated that it had considered the physical exam dated Jun. 29, 2005. (R. 6). The Appeals Council also stated in regard to the Jun. 29, 2005 evidence, "This new information is about a later time [than the ALJ's decision, dated Jun. 22, 2005]. <u>Therefore</u>, it does not affect the decision about whether you were disabled beginning on or before June 22, 2005." (R. 6)(emphasis added). Thus, the record is unclear whether the Appeals Council determined (1) the physical exam evidence was new, material, and chronologically relevant, but that it would not change the ALJ's decision; or (2) that the evidence would be made a part of the administrative record despite the fact it was not chronologically relevant, but that the Appeals Council would explain that it was not chronologically relevant and could not change the ALJ's decision.

The court cannot decide which explanation is correct. In light of the regulations quoted above, the fact that the evidence

-17-

was made a part of the administrative record and considered by
the Appeals Council implies that the evidence was chronologically
relevant.  If the Appeals Council found the evidence
chronologically relevant, it was error to state that <u>because the</u>
<u>evidence related to a later time</u> it would not affect the ALJ's
decision.  The Council's statement that the evidence concerned a
time after the ALJ's decision and would <u>therefore</u> not affect the
decision, implies that the evidence was not chronologically
relevant.  If the Appeals Council found the evidence not
chronologically relevant, it was error to make the evidence a
part of the administrative record--failing to return the new
evidence to plaintiff with an explanation and advice regarding
his right to file a new application based upon the new evidence.
Therefore, remand is necessary for the Commissioner to properly
evaluate the evidence at issue and determine whether it is new,
material, and chronologically relevant, and then determine
whether plaintiff's impairments medically equal Listing 1.04 when
considering or not considering the evidence, as appropriate.

On remand, plaintiff may make his arguments regarding
consideration of obesity, use of a medical expert to evaluate
medical equivalence, and medical equivalence to Listing 1.04.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision
be REVERSED and JUDGMENT be entered pursuant to the fourth
sentence of 42 U.S.C. § 405(g) REMANDING this case to the

-18-

Commissioner for further proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Hill v. SmithKline Beecham Corp.</u>, 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 6th day of March 2007, at Wichita, Kansas.


                              s/John Thomas Reid
                              **JOHN THOMAS REID**
                              **United States Magistrate Judge**